## FARMERS' LOAN & TRUST CO. *v.* STONE and others.[1]

*(Circuit Court, S. D. Mississippi.* April 24, 1884.)

1. CONSTITUTIONAL LAW—CHARTER OF CORPORATION—CONTRACT.

A charter granted by a state and accepted by the corporation constitutes a contract which falls within the protection of the tenth section of article 1 of the constitution of the United States.

2. SAME—STATUTES, WHEN DECLARED VOID.

It is a well-settled rule that courts will not declare legislative enactments void by reason of their repugnance to the constitutions, state or federal, except when the judicial mind is clearly convinced of such repugnancy.

3. SAME—POLICE POWERS OF STATE.

The legislature cannot part with any of the police powers of the state, which are matters that affect the public peace, public health, public morals, and public convenience.

4. SAME — REGULATION OF TOLLS FOR TRANSPORTATION OF PERSONS AND PROPERTY.

But the right to fix and regulate tolls to be charged and received for transportation of persons and property does not fall within the police power of the state.

5. SAME—MISSISSIPPI STATUTE OF FEBRUARY 17, 1848.

The twelfth section of the charter granted by the state of Alabama to the Mobile & Ohio Railroad Company, and adopted by the legislature of Mississippi, approved on the seventeenth of February, 1848, which provides as follows: "And be it further enacted, that it shall be lawful for the company hereby incorporated, from time to time, to fix, regulate, and receive the toll and charges, by them to be received for transportation of persons and property on their railroad or way aforesaid, hereby authorized to be constructed, or any part thereof,"—creates a valid and binding contract between the state of Mississippi and the Mobile & Ohio Railroad Company.

6. SAME—ACT OF MARCH 11, 1884, VOID.

The act of March 11, 1884, entitled "An act to provide for the regulation of freight and passengers on railroads in this state, and to create a commission to supervise the same, and for other purposes," is null and void in so far as the act relates to the Mobile & Ohio Railroad, for the reason the state conferred the right and power upon the company in its charter to fix and regulate the toll to be charged and received for the transportation of persons and property, without reserving the right at any time in the future to change, modify, repeal, or withdraw such right.

7. SAME—CHARTER OF MOBILE & OHIO RAILROAD COMPANY—OBJECT.

The states of Alabama, Mississippi, Tennessee, and Kentucky, in chartering the Mobile & Ohio Railroad Company, acted separately, it is true, but with one common purpose, and that was to create one corporate body for the maintenance of a great commercial highway of communication from Mobile, Alabama, to Cairo, Illinois, and to connect with all the commercial highways converging at those points.

8. SAME—REGULATION OF COMMERCE.

The act of March 11, 1884, is in conflict with and violates the eighth section of the first article of the constitution of the United States, because in purpose and effect it is a regulation of "commerce among the states," which right is exclusively vested by this provision of the federal constitution in the congress of the United States, and is therefore null and void.

In Equity.

*E. L. Russell, John A. Campbell,* and *Peter Hamilton,* for complainant.

*J. W. C. Watson,* for commission.

[1] Reported by B. B. Boone, Esq., of the Mobile, Alabama, bar.

HILL, J.   This bill is filed against the defendants, John M. Stone, W. B. Augustus, and William McWillie, as railroad commissioners of this state, to enjoin and restrain them from in any way interfering with the Mobile & Ohio Railroad Company, its officers, agents, or employes, in the management of the business of said railroad, or the property and business of said corporation, and to prevent the officers of said railroad from obeying any orders issued or made by the railroad commission, etc.   The questions presented have been most forcibly and exhaustively argued by the distinguished and learned counsel on both sides, and are questions of grave importance to the people and the commercial interests of the country generally, as well as to the complainant and all whose interest it represents or to be affected by the result hereof.   The questions now to be decided arise upon complainant's motion for the issuance of the writ of injunction prayed for in the bill above stated.

The facts stated in the bill, not being disputed, will be considered as true in considering this motion, and of which the following is a brief statement, so far as it relates to the present motion:   In the year 1848 the legislatures of the states of Alabama, Mississippi, Tennessee, and Kentucky, acting separately, but with a common purpose, by their several acts of incorporation incorporated the Mobile & Ohio Railroad Company, the purpose of which was to construct, equip, and operate a railroad to extend from Mobile, in Alabama, to a point opposite Cairo, in the state of Illinois, at the junction of the Mississippi and Ohio rivers, so as to connect with the channels of commerce at each end of this line with all those at intermediate points, thus creating a great national highway for the transportation of persons and property, not only from the one point to the other and intermediate points, but with other states and the markets of the world, one channel of commerce being connected with another as links in chains of commercial transportation to an unlimited extent.   To promote this grand scheme, the United States granted to the corporation many thousands of acres of its lands situate in the states of Alabama and Mississippi, owning no lands in the other states through which this railroad was located.   The corporation was further aided by the states and counties and citizens along the line of the road by contributions of money, labor, and otherwise, by which means the railroad has been completed, equipped, and has been operated for many years without any interruption by any state legislation until within a short time. That, as a consideration upon which said land was granted by the United States, certain rights were reserved by the government in relation to the transportation of the mails, property, and men belonging to or employed by the United States.   The corporation being in need of money, has given a trust deed to complainant, as trustee therein, to secure certain bonds, upon which it has raised the needed funds for the purpose of discharging its other indebtedness, and for the better equipping and operating said railroad.

The bill further states that the acts of incorporation conferred upon this corporation, among other powers, the right to elect its own officers, and to do and perform all acts necessary to the building, equipping, and operating said railroad, and especially the right from time to time to fix, regulate, and receive the tolls and charges by them to be received for the transportation of persons and property on said railroad constructed or to be constructed. The bill further states and charges that, on the eleventh day of March last, the legislature of this state passed an act, which has been approved by the governor of the state, entitled "An act to provide for the regulation of freight and passengers on railroads in this state, and to create a commission to supervise the same, and for other purposes." That under the provisions of this act of the legislature the defendants have been appointed and commissioned as commissioners, and are now proceeding to exercise the powers and to discharge the duties imposed and prescribed in said act. If permitted so to do, so far as it relates to the Mobile & Ohio Railroad, it will greatly interfere with and embarrass the business and management of said company, and its railroad, and the interests of all concerned therein; that such interference, if permitted, will impair important and essential rights which have been vested in said corporation by the charter of said company, which formed and constitutes a contract between the state of Mississippi, which granted, and the company, which accepted, said charter, and which contract is protected and inviolate by the provisions of the tenth section of the first article of the constitution of the United States.

The provisions contained in the sixth section of the act complained of are mainly relied upon as impairing the contract so made and violating the rights so secured. This section is as follows:

"That it shall be the duty of all persons or corporations who shall own or operate a railroad in this state, within thirty days after the passage of this act, to furnish the commissioner with its tariff of charges for transportation of every kind; and it shall be the duty of said commission to revise said tariff of charges so furnished and to determine whether or not, and in what particular, if any, said charges are more than just compensation for the services to be rendered, and whether or not unjust discrimination is being made in such tariff of charges against any person, locality, or corporation; and when said charges are corrected as approved by said commission, the commission shall then append a certificate of its approval to said tariff of charges, but in revising or establishing any and every tariff of charges, it shall be the duty of said commission to take into consideration the character and nature of the service to be performed and the entire business of such railroad, together with its earnings from the passenger and other traffic, and shall so revise such tariffs as to allow a fair and just return on the value of such railroad, its appurtenances, and equipments; and it shall be the duty of said commission to exercise a watchful and careful supervision over every such tariff of charges, and continue such tariff of charges from time to time, as justice to the public and each of said railroad companies may require, and to increase or reduce any of said rates according as experience and business operations may show to be just; and said commission shall accordingly fix tariffs of charges for those railroads failing to furnish tariffs as above required; and it shall be the

duty of said railroad companies or persons operating any railroad in this state to post at each of its depots all rates, schedules, and tariffs for the transportation of passengers and freights, made or approved by said railroad commission, with said certificate of approval, within ten days after said approval, in some conspicuous place at such depot; and it shall be unlawful for any such person or corporation to make any rebate or reduction from such tariff in favor of any person, locality, or corporation which shall not be made in favor of all other persons, localities, or corporations by a change in such published rates, except as may be allowed by the commission; and when any change is contemplated to be made in the schedule of passenger or freight rates of any railroad by the commission, said commission shall give the person or corporation operating or managing said railroad notice in writing, at least ten days before such change, of the time and place at which such change will be considered."

These and other sections in the act imposing other duties upon said commission in relation to the control of said railroads, and imposing upon the persons and corporations managing them penalties for violating the provisions of said act of the legislature, and which it is alleged violates and impairs the contract so made between the legislature and corporation by the charter aforesaid, as well as in violation and in conflict with other provisions of the constitution of the United States and of the constitution of this state; but the section above quoted is sufficient to present the question to be decided upon this motion. It is not necessary to refer to adjudicated cases by the supreme court of the United States to maintain the well-settled rule that courts will not declare legislative enactments void by reason of their repugnance to the constitutions, state or federal, except when the judicial mind is clearly convinced of such repugnancy; but it is equally well settled that when the judicial mind is so convinced it is the duty of the court to declare the legislation void. The court has no jurisdiction to determine the wisdom or unwisdom of the act in question; if unwise, the legislature alone can grant relief. The only question which the court can decide is, did the legislature have the power to pass the act? or, in other words, did any inhibition against such power exist under any provision of the federal or state constitution? If none such existed the act must be maintained; but if such did exist it must be declared void so far as it relates to the Mobile & Ohio Railroad Company and the property and interest of all persons connected therewith.

The question to be determined is, did the act of incorporation passed by the legislature of Alabama and adopted by the state of Mississippi, in relation to the point under consideration which is as follows: "And be it further enacted, that it shall be lawful for the company hereby incorporated *from time to time to fix, regulate,* and *receive* the *toll* and *charges* by *them to be received* for transportation of persons or property on their railroad or way aforesaid hereby authorized to be constructed, erected, built, or used, or upon any part thereof,"—create a valid and binding contract between the state and the corporation, and which the legislature is inhibited by the provis-

ion of the tenth section of article 1 of the federal constitution from changing or impairing, without the consent of the corporation or those holding under it. That the rights, powers, and franchises granted by the legislature to corporators by the charter creating them, and which are accepted by those to whom they'are granted, are contracts within the meaning of the constitution, was settled by the supreme court of the United States in the *Dartmouth College Case,* and has been repeatedly recognized by that court from that time to the present, and is the main pillar upon which corporate rights must rest for security; and it is not to be presumed that that court at least will depart from a rule so well settled as long as *constitutional* rights are maintained. The charter being the contract between the parties to it, must be taken with all its conditions, restrictions, and limitations. The legislature had the right in granting it to reserve the right to change, modify, or repeal it or any provisions in it; or if it contains any provisions within the police power of the state, or power from which the legislature is not at liberty to part, being such matters as affect the public peace, public health, public morals, public convenience, and the like, the legislature may at will revoke rights and powers conferred or may limit and contract them. Those accepting corporate rights take them subject to this power upon the part of the legislature.

In construing contracts we must ascertain, if we can, the intention of the parties to them, and in doing so we must look to the objects for which they were made, and in the light of the surrounding circumstances. One important, if not the main, object upon the part of the stockholders was to obtain a return by way of dividends for the investment made, and, upon the part of the United States and counties, the main purpose was the establishment of a reasonably safe and rapid mode of transportation of persons and property from one end of the line to be constructed to the other, with all its connections. These being the principal objects of the parties to the contract on the one side, it is not probable that the charter would have been accepted, with the understanding that the legislature of any one of the states could at pleasure place any restrictions or limitations upon the rights and powers conferred, and which were not reserved in the act of incorporation.

The right upon the part of the company to charge and receive compensation for services to be rendered, if taken away or impaired, would defeat the purpose of the contract. This right to fix the charges for compensation certainly does not fall within any *police* power of the states.

The next question is, to whom was it given by the contract in the charter? Most clearly to the company, without any restriction or reservation.

It is contended on the part of the defendants that this power was not given; that the words of the charter are that it shall be lawful for

the company to fix the amount to be received, and that these words were unnecessary. I am of the opinion that, by the language used, it was understood by both parties as conferring the *power and authority* to fix the charges. I am further satisfied that the right and power granted by the charter created a contract upon the part of the state which it could not change, repeal, or modify without the consent of the other parties to it; and any attempt so to do on the part of the state must be held, under the provisions of the constitution referred to, null and void, so far as it relates to the question under consideration. If the company, by its officers, has the power to fix its tariff of charges, the commission cannot fix a rate of charges different from that fixed by the company, which will be obligatory upon the company. It is clear that the legislature intended to give such power to the commission, and imposes severe penalties upon the corporation and its officers for demanding or receiving different rates than those those fixed by the commission, and for other violations of the act.

With the conclusion thus reached, I might dismiss the subject without further comment, but it has been pressed with great force and ability on the one side, and with equal ability resisted on the other, that this act of the legislature is in conflict with and violates the eighth section of the first article of the constitution of the United States, because, in purpose and effect, it is a regulation of commerce among the states, which right is exclusively vested, by this provision of the federal constitution, in the congress of the United States. This is a pregnant and important question in which all concerned are deeply interested.

As already stated, the right to demand and receive compensation for the expense incurred in building, equipping, and operating this wonderful and immense avenue and mode of transportation of commerce from one place, state, and country to another, is an absolute necessity; it is difficult to see how the right to fix and regulate the charges for the transportation of persons and freight can be considered in any other light than a regulation of commerce, and that when the railroad passes through more states than one, and the transportation passes from one state to another, or through more than one state, it does constitute commerce among the states, and deprives the states of the power to regulate it. As already stated, the Mobile & Ohio railroad was designed to be and was charted by the legislatures of Alabama, Mississippi, Tennessee, and Kentucky, all acting separately, to be sure, but with one common purpose, and that was to constitute one corporate body for the maintenance of a great commercial highway of communication and transportation from Mobile, Alabama, to Cairo, Illinois, and thence to connect with all the commercial highways converging at those points. It is not, therefore, a mere local highway, although, as an incident, freight and passengers were intended to be and are transported from one place to another in the same state, as do vessels on the navigable streams; and in that

case the supreme court of the United States decided that in the transportation of a person from New Orleans to Hermitage, in the state of Louisiana, upon the Mississippi river, the latter place being the point of destination, was commerce, within the exclusive control of congress, for the reason that the vessel was engaged in the transportation of passengers between New Orleans, in Louisiana, and Vicksburg, in this state, and that an act of the legislature of Louisiana, attempting to control the carrying of passengers in steam-boats, was a violation of the provisions of the constitution of the United States conferring upon congress the power to regulate commerce among the states. *Hall* v. *De Cuir*, 95 U. S. 485. The reason given is that the points of destination of that line of transportation were in different states.

The cases of *Munn* v. *Illinois*, 94 U. S. 113; *Chicago, B. & Q. R. Co.* v. *Iowa*, Id. 155; *Peik* v. *Chicago & N. W. R. Co.* Id. 164, are relied upon to sustain the validity of the act as to the latter class of cases. The first-named case was in relation to warehouses situated in Illinois, and does not, in my opinion, apply to the question under consideration. In the second case the railroad about which the controversy arose was wholly within the state of Iowa. .The last case at first view would seem to sustain the position assumed by counsel, but when examined will be found only to apply to such commerce as is of domestic concern, and to transportation within the state, and that carried without the state of Wisconsin, but controlled by the laws of that state, the constitution of which reserves to that state the power to alter or repeal the laws in relation to railroad companies. It is admitted in the opinion in that case that congress may pass laws to regulate the last-named transportation, but until congress acts the state of Wisconsin may pass laws regulating commerce over this particular road. In the case under consideration neither the constitution of the state of Mississippi nor the charter of the Mobile & Ohio Railroad Company reserved any power to legislate in relation to this or any other railroad company. I am therefore of opinion that the ruling of the supreme court in the last-named case does not apply to the case before the court, and that the question before the court upon this point is an open one so far as it relates to this court.

The question has been passed upon by Judge McCrary, in the circuit court in Iowa, in the case of *Kaeiser* v. *Illinois Cent. R. Co.* 18 Fed. Rep. 151, in which that distinguished judge held that a statute of Iowa fixing the maximum rate to be charged by railroad companies for carrying freight within the state is invalid in so far as by its terms it applies to through shipments from points within the state to points without the state, because it is a regulation of commerce beyond the state, and if upheld would enable the state to discriminate against other states.

In the recent case decided at Nashville by Judges Baxter, Hammond, and Key, (*Louisville & N. R. Co.* v. *Railroad Com'rs of Tenn.*

19 FED. REP. 679,) Judge HAMMOND, delivering the opinion on this question, which was assented to by the other judges, holds the same rule.

Other decisions might be referred to going to sustain the same rule; but being satisfied the rule stated is the law, I adopt it, and under the operation of which the act of the legislature complained of in the bill must be held in conflict with the constitution of the United States and void.

I am therefore brought to the conclusion that for the reasons stated, if for no other, so far as this act of the legislature authorizes and requires the commission to fix a tariff of charges to be enforced against the Mobile & Ohio Railroad Company, it must be declared null and void. The commission having no power to fix and regulate the tariff of charges for the Mobile & Ohio Railroad Company, the provisions of the act in relation to other powers and duties to be performed on the part of the commission, so far as they relate to that corporation, must also be declared void.

The other objections to this act of the legislature raised and argued by counsel, not being necessary to be considered upon the present motion, will be postponed until the hearing of the cause.